**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| ARASHI VISION INC. (D/B/A INSTA360), ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> SZ DJI TECHNOLOGY CO., LTD., SZ DJI ) <br> OSMO TECHNOLOGY CO., LTD., DJI ) <br> EUROPE B.V., and IFLIGHT TECHNOLOGY ) <br> COMPANY LIMITED, ) <br> ) <br> Defendants. ) | Case No. 2:26-cv-00466 <br><br> Jury Trial Demanded |

**COMPLAINT**

Plaintiff Arashi Vision Inc. (d/b/a Insta360) ("Plaintiff," "Arashi Vision," or "Insta360") by and through its undersigned counsel, file this complaint under 35 U.S.C. § 271 for patent infringement against SZ DJI Technology Co., Ltd. ("SZ DJI"), SZ DJI Osmo Technology Co., Ltd. ("SZ DJI Osmo"), DJI Europe B.V. ("DJI Europe"), and iFlight Technology Company Limited ("iFlight") (collectively, "Defendants" or "DJI"), and allege as follows.

1.     This is an action for patent infringement arising out of Defendants' infringement of U.S. Pat. Nos. 11,388,339 (the "'339 Patent") and 9,554,045 (the "'045 Patent") (collectively the "Patents-in-Suit"), each generally relating to imaging technology. Defendants do business under various DJI alter-egos and sell, directly or indirectly, handheld-gimbal camera products to the United States through their own website, retailers, and distributors.

2.     Defendants infringe the Patents-in-Suit by making, using, offering to sell, selling, or importing, to/within the United States; and inducing and/or contributing to such acts

1

conducted by other parties, via at least DJI's Osmo 360 product and/or software applications compatible with the Osmo 360 product (the "Accused Products").

3.      Defendants each have knowledge of the '339 and '045 Patents and their infringement at least from June 4, 2026 when Insta360 sent a list of its patents to DJI, including both the '339 Patent and the '045 Patent, and have further knowledge since at least the filing of this complaint.

## THE PARTIES

**Plaintiff**

4.      Plaintiff Arashi Vision Inc. (d/b/a "Insta360") is a publicly traded company incorporated in the People's Republic of China, with its registered address at Room 1101, 1102, 1103, 11th Floor, Building 2, Jinlitong Financial Center, 1100 Xingye Road, Haiwang Community, Xin'an Street, Bao'an District, Shenzhen, China.

5.      Insta360 is a pioneering leader and an award-winning innovator in the field of cameras and imaging. Insta360's mission is to help people better capture and share their lives.



2

6.      Insta360 is renowned for its partnerships and products used to record action sports, travel, and other outdoor applications. The core of Insta360's business is a commitment to improving the customer experience by rejecting the idea of "impossible" and setting new standards for imaging technology, which it has done since its founding in 2015.





7.      Insta360 has been repeatedly recognized for its industry-leading work in developing technology relating to capturing life in high-quality images. Insta360's contributions

3

have been recognized by worldwide names like TIME, the National Academy of Television Arts and Sciences, the London Design Awards, New York Product Design Awards, and YouTube, among others.







8.       These pioneering achievements in design and capabilities are captured in part by the Patents-In-Suit, confirming the innovative contributions Insta360 has achieved as it continues to push the boundaries for what is possible.

**Patents-In-Suit**

9.       Arashi Vision is the owner and the assignee of the '339 Patent entitled "Anti-Shake Method for Panoramic Video, and Portable Terminal." Arashi Vision has ownership of all substantial rights in the '339 Patent, including the right to exclude others and to enforce, sue, and recover damages for past and future infringement. A true-and-correct copy of the '339 Patent is attached as Exhibit A.

10.       Claim 1 of the '339 Patent reads as follows:

An anti-shake method for a panoramic video, comprising steps of:
obtaining, in real time, an output video frame, a fisheye image corresponding to the output video frame, a timestamp of the pixel in the video frame, and a corresponding camera gyroscope timestamp;
synchronizing the timestamp of the pixel in the video frame with the corresponding camera gyroscope timestamp, and calculating a rotation matrix of the camera movement in the camera gyroscope timestamp;
smoothing the camera movement and establishing a coordinate system of a smooth trajectory;
correcting the fisheye image distortion; and

rendering the fisheye image by means of forward rendering to generate a stable video,

wherein the step of obtaining, in real time, an output video frame, a fisheye image corresponding to the output video frame, a timestamp of the pixel in the video frame, and a corresponding camera gyroscope timestamp, specifically comprises:

obtaining the output video frame and the fisheye image corresponding to the output video frame;

obtaining the timestamp $t_{frame}^{k}{}^{p(x,y)}$ of the pixel p(x,y) in the k video frame in the time axis of a video frame acquisition system, where k is a natural number; and

obtaining the gyroscope timestamp $t_{gyro}^{k}{}^{p(x,y)}$ in the time axis of the corresponding camera gyroscope acquisition system.

11. Claim 7 of the '339 Patent reads as follows:

A portable terminal, comprising:
one or more processors;
a memory; and
one or more computer programs including a set of computer-executable instructions, where the set of computer-executable instructions are stored in the memory and are configured to be executed by the one or more processors, wherein when being executed by the one or more processors, cause the one or more processors to perform steps of an anti-shake method for a panoramic video:

obtaining, in real time, an output video frame, a fisheye image corresponding to the output video frame, a timestamp of the pixel in the video frame, and a corresponding camera gyroscope timestamp;

synchronizing the timestamp of the pixel in the video frame with the corresponding camera gyroscope timestamp, and calculating a rotation matrix of the camera movement in the camera gyroscope timestamp;

smoothing the camera movement and establishing a coordinate system of a smooth trajectory;

correcting the fisheye image distortion; and

rendering the fisheye image by means of forward rendering to generate a stable video;

wherein the step of obtaining, in real time, an output video frame, a fisheye image corresponding to the output video frame, a timestamp of the pixel in the video frame, and a corresponding camera gyroscope timestamp, specifically comprises:

6

obtaining the output video frame and the fisheye image corresponding to the output video frame:

obtaining the timestamp $t^{k}_{frame}{}^{p(x,y)}$ of the pixel p(x,y) in the k video frame in the time axis of a video frame acquisition system, where k is a natural number; and

obtaining the gyroscope timestamp $t^{k}_{gyro}{}^{p(x,y)}$ in the time axis of the corresponding camera gyroscope acquisition system.

12.    A person of ordinary skill in the art reading the '339 Patent and its claims would understand that the patent's disclosure and claims are drawn to solving specific, technical problems arising in the area of high-speed video imaging realized by rolling shutters, specifically the jello effect in panoramic videos, and that the invention provides for advancements in the field that, as of the filing date, were not routine, well-understood or conventional. Accordingly, each claim of the '339 Patent recites a combination of elements sufficient to ensure that the claim in practice amounts to significantly more than a patent claiming an abstract concept. A person of ordinary skill in the art would understand that the ordered combination of claim elements is inventive. Further, the claimed improvements over prior art are concrete and improve the capabilities of existing methods and terminals.

13.    The '339 Patent is valid, enforceable, and was duly and legally issued on July 12, 2022, in full compliance with Title 35 of the United States Code.

14.    Arashi Vision is the owner and the assignee of the '045 Patent entitled "Systems and Methods for Digital Video Stabilization via Constraint-Based Rotation Smoothing." Arashi Vision has ownership of all substantial rights in the '045 Patent, including the right to exclude others and to enforce, sue, and recover damages for past and future infringement. A true-and-correct copy of the '045 Patent is attached as Exhibit B.  A true-and-correct copy of the assignment history of the '045 Patent retrieved from the USPTO website is attached as Exhibit C.

15.    Claim 1 of the '045 Patent reads as follows:

A computer implemented method comprising:

receiving, by a computer system, input image frames associated with a video;

receiving, by the computer system, camera orientation data from a gyroscope;

generating, by the computer system, stabilized image frames based at least on the input image frames and the camera orientation data from the gyroscope; and

smoothing the camera orientation data to produce a smoothed set of camera orientation data, wherein the smoothing the camera orientation data comprises minimizing a rate of rotation between successive input image frames while minimizing an amount of empty regions in the input image frames reoriented based on the smoothed set of camera orientation data.

16.    Claim 9 of the '045 Patent reads as follows:

A system comprising:

at least one processor, and

a memory storing instructions configured to instruct the at least one processor to perform:

receiving input image frames associated with a video;

receiving camera orientation data from a gyroscope;

generating stabilized image frames based at least on the input image frames and the camera orientation data from the gyroscope; and

smoothing the camera orientation data to produce a smoothed set of camera orientation data, wherein the smoothing the camera orientation data comprises minimizing a rate of rotation between successive input image frames while minimizing an amount of empty regions in the input image frames reoriented based on the smoothed set of camera orientation data.

17.    Claim 13 of the '045 Patent reads as follows:

A non-transitory computer storage medium storing computer-executable instructions that, when executed, cause a computer system to perform computer-implemented method comprising:

receiving input image frames associated with a video;

receiving camera orientation data from a gyroscope;

generating stabilized image frames based at least on the input image frames and the camera orientation data from the gyroscope; and

smoothing the camera orientation data to produce a smoothed set of camera orientation data, wherein the smoothing the camera orientation data comprises

minimizing a rate of rotation between successive input image frames while minimizing an amount of empty regions in the input image frames reoriented based on the smoothed set of camera orientation data.

18. A person of ordinary skill in the art reading the '045 Patent and its claims would understand that the patent's disclosure and claims are drawn to solving specific, technical problems arising in the area of video stabilization suitable for mobile devices, and that the invention provides for advancements in the field that, as of the filing date, were not routine, well-understood or conventional. Accordingly, each claim of the '045 Patent recites a combination of elements sufficient to ensure that the claim in practice amounts to significantly more than a patent claiming an abstract concept. A person of ordinary skill in the art would understand that the ordered combination of claim elements is inventive. Further, the claimed improvements over prior art are concrete and improve the capabilities of existing methods, systems, and storage media.

19. The '045 Patent is valid, enforceable, and was duly and legally issued on January 24, 2017, in full compliance with Title 35 of the United States Code.

**Defendants**

20. Upon information and belief, SZ DJI is a Chinese corporation with its principal place of business located at DJI Sky City, No. 53 Xianyuan Road, Nanshan District, Shenzhen, China. Upon information and belief, SZ DJI conducts business, either directly or indirectly through its agents, on an ongoing basis in this District and elsewhere in the United States. SZ DJI's business includes, but is not limited to, the research and development of handheld-gimbal camera products imported and/or sold in the United States, including the Accused Products (as defined above and explained below). Upon information and belief, SZ DJI imports and sells the

Accused Products directly into the United States and also through its corporate-owned offices, wholly owned subsidiaries, and agents in the United States that it directs and controls.

21.     Upon information and belief, SZ DJI Osmo is a Chinese corporation with its principal place of business also located at DJI Sky City, No. 53 Xianyuan Road, Nanshan District, Shenzhen, China. Upon information and belief, SZ DJI Osmo conducts business, either directly or indirectly through its agents, on an ongoing basis in this District and elsewhere in the United States. SZ DJI Osmo's business includes, but is not limited to, the research and development of handheld-gimbal camera products imported and/or sold in the United States, including the Accused Products (as defined above and explained below). Upon information and belief, SZ DJI Osmo imports and sells the Accused Products directly into the United States and also through its corporate-owned offices, wholly owned subsidiaries, and agents in the United States that it directs and controls.

22.     Upon information and belief, DJI Europe is a Dutch corporation with its principal places of business located at Bijdorp-Oost 6, 2992 LA Barendrecht, Netherlands. Upon information and belief, DJI Europe conducts business, either directly or indirectly through its agents, on an ongoing basis in this District and elsewhere in the United States, including but not limited to, the sale of handheld-gimbal camera products, including the Accused Products (as defined above and explained below).  DJI Europe facilitates the global distribution of the Accused Products, including their sales in and importation into the United States.

23.     Upon information and belief, iFlight is a Hong Kong SAR corporation with its principal place of business located at Units 915-916, 9/F, Building 16W, Science Park West Avenue, Phase Three, Hong Kong Science Park, Pak Shek Kok, New Territories, Hong Kong SAR, China. Upon information and belief, iFlight is SZ DJI's parent company and conducts

10

business, either directly or indirectly through its agents, on an ongoing basis in this District and elsewhere in the United States. Upon information and belief, iFlight's business includes selling the handheld-gimbal camera products in the United States. For example, iFlight contracts with DJI's United States entities and other DJI subsidiaries to place the handheld-gimbal camera products within the stream of commerce, and does so with the knowledge that these products will enter the stream of commerce within the United States.

24.    Upon information and belief, SZ DJI, SZ DJI Osmo, and iFlight direct and control the operations of DJI, including DJI Europe, or alternatively, these entities form a joint business enterprise, making each other's performance attributable to the others. DJI markets and sells the Accused Products through its website (https://www.dji.com/), authorized retailers (e.g., Best Buy[1], Amazon[2]), and contracted distributors (e.g., Focus Global Digital Limited operating a website at https://www.djiusa.com/ and owning at least one warehouse in Chino, California) in the United States, including this District. DJI Europe B.V. facilitates the global distribution of the Accused Products, including their sales in and importation into the United States.

25.    On information and belief, the Accused Products can be purchased at numerous retailers throughout the United States, including in the Eastern District of Texas. Defendants make, use, offer to sell, sell, supply, and service the Accused Products throughout the United States, including in this District.

**JURISDICTION AND VENUE**

---

[1] *See*, *e.g.*, https://www.bestbuy.com/product/dji-osmo-360-standard-combo-black/JJ82LXCTRK (last visited June 11, 2026).
[2] *See*, *e.g.*, https://www.amazon.com/DJI-Standard-Imaging-Recording-Waterproof/dp/B0DTTZZ6Q3/ (last visited June 11, 2026).

11

26.     Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

27.     This Court has original subject-matter jurisdiction over the claims in this action under the provisions of the Patent Act, 35 U.S.C. § 1, *et seq*., and under 28 U.S.C. § 1338(a) and § 1331.

28.     This Court has personal jurisdiction over DJI because it has supplied its products into this district and under the Federal Long Arm Rule, FRCP 4(k)(2).

29.     This Court has personal jurisdiction and venue under 28 U.S.C. § 1391(c)(3) over DJI because SZ DJI, SZ DJI Osmo, DJI Europe, and iFlight, as foreign entities, are subject to venue in any judicial district, and conduct substantial business in the United States and this District through the manufacture, distribution, and sale of the Accused Products by their own or to and through retailers or distributors.

30.     Venue is appropriate in this Court for all Defendants under applicable law, including 28 U.S.C. §§ 1391 and/or 1400.

## COUNT I
### INFRINGEMENT OF UNITED STATES PATENT NO. 11,388,339
#### (35 U.S.C. § 271)

31.     Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

32.     Defendants have directly infringed the '339 Patent by making, using, offering to sell, and/or selling in the United States, and/or importing into the United States the Accused Products that infringe at least claims 1 and 7 of the '339 Patent.

33.     On information and belief, Defendants at least have sold and sell the Accused Products to consumers, third-party distributors, and retailers in the United States.  These distributors and retailers in turn offer for sale and/or sell the Accused Products to third-party end

Case 2:26-cv-00466 Document 1 Filed 06/11/26 Page 13 of 18 PageID #: 13

users in the United States.  The consumers, distributors, retailers, and/or end users in the United States at least use the Accused Products.  These activities undertaken by the consumers, distributors, retailers, and/or end users constitute direct infringement of the '339 Patent.

34.     Defendants' sale of the Accused Products to distributors and retailers and eventually end users has induced and continues to induce acts by distributors, retailers, and end users that Defendants know or should have known constitute direct infringement of the '339 Patent.  Defendants actively induce infringement of the '339 Patent by designing the Accused Products such that they infringe the '339 Patent and by directing, promoting, and encouraging the use, sale, and/or importation of the Accused Products by distributors, retailers, and/or end users in ways that infringe the '339 Patent.

35.     Specifically, Defendants have induced others to infringe and/or contributed to the infringement of the '339 Patent by inducing and/or contributorily causing others to infringe at least claims 1 and 7 of the '339 Patent. For example, upon information and belief, (a) Defendants had actual knowledge of the '339 Patent or were willfully blind to its existence prior to its knowledge acquired no later than June 4, 2026, (b) Defendants intentionally cause, urge, or encourage retailers, distributors, and end users of the Accused Products to directly infringe one or more claims of the '339 Patent by promoting, advertising, and instructing customers and potential customers about the products and their uses, including infringing uses, and (c) Defendants know (or should have known) that their actions will induce retailers, distributors, and customers of their products to directly infringe one or more claims the '339 Patent, and (d) retailers, distributors, and customers directly infringe one or more claims of the '339 Patent. For instance, at a minimum, Defendants have supplied and continue to supply the retailers and distributors like Amazon.com and Best Buy with the Accused Products, knowing that the

products will end up being sold in the United States and in this District, and that Defendants' customer retailers and distributors then directly infringe one or more claims of the '339 Patent at least by importing into, offering for sale in, or selling in the United States and this District the Accused Products.

36.    The Accused Products are known by Defendants to be especially made or especially adapted for use in infringement of the '339 Patent and are not staple articles or commodities of commerce suitable for substantial non-infringing use.  Defendants' sale of the Accused Products to distributors and retailers and eventually end users has therefore contributed to and continue to contribute to the infringement of the '339 Patent.

37.    Defendants have infringed the '339 Patent through the aforesaid acts and will continue to do so unless enjoined by this Court.  Defendants' wrongful conduct has caused Plaintiff to suffer irreparable harm resulting from the loss of its lawful patent rights to exclude others from making, using, selling, offering for sale, and importing the patented invention. Plaintiff is entitled to injunctive relief under 35 U.S.C. § 283.

38.    Plaintiff is entitled to recover damages adequate to compensate for Defendants' infringement of the '339 Patent, as well as any other damages as appropriate under 35 U.S.C. § 284.

39.    Defendants' infringement of the '339 Patent has been and is willful, deliberate, and in disregard of Plaintiff's patent rights.  Plaintiff is thus entitled to enhanced damages up to three times the amount of actual damages under 35 U.S.C. § 284 and attorney fees under 35 U.S.C. § 285.

**COUNT II**
**INFRINGEMENT OF UNITED STATES PATENT NO. 9,554,045**
**(35 U.S.C. § 271)**

40.     Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

41.     Defendants have directly infringed the '045 Patent by making, using, offering to sell, and/or selling in the United States, and/or importing into the United States the Accused Products that infringe at least claims 1, 9, and 13 of the '045 Patent.

42.     On information and belief, Defendants at least have sold and sell the Accused Products to consumers, third-party distributors, and retailers in the United States.  These distributors and retailers in turn offer for sale and/or sell the Accused Products to third-party end users in the United States.  The consumers, distributors, retailers, and/or end users in the United States at least use the Accused Products.  These activities undertaken by the consumers, distributors, retailers, and/or end users constitute direct infringement of the '045 Patent.

43.     Defendants' sale of the Accused Products to distributors and retailers and eventually end users has induced and continues to induce acts by distributors, retailers, and end users that Defendants know or should have known constitute direct infringement of the '045 Patent.  Defendants actively induce infringement of the '045 Patent by designing the Accused Products such that they infringe the '045 Patent and by directing, promoting, and encouraging the use, sale, and/or importation of the Accused Products by distributors, retailers, and/or end users in ways that infringe the '045 Patent.

44.     Specifically, Defendants have induced others to infringe and/or contributed to the infringement of the '045 Patent by inducing and/or contributorily causing others to infringe at least claims 1, 9, and 13 of the '045 Patent. For example, upon information and belief, (a) Defendants had actual knowledge of the '045 Patent or were willfully blind to its existence prior to its knowledge acquired no later than June 4, 2026, (b) Defendants intentionally cause, urge, or

encourage retailers, distributors, and end users of the Accused Products to directly infringe one or more claims of the '045 Patent by promoting, advertising, and instructing customers and potential customers about the products and their uses, including infringing uses, and (c) Defendants know (or should have known) that their actions will induce retailers, distributors, and customers of their products to directly infringe one or more claims the '045 Patent, and (d) retailers, distributors, and customers directly infringe one or more claims of the '045 Patent. For instance, at a minimum, Defendants have supplied and continue to supply the retailers and distributors like Amazon.com and Best Buy with the Accused Products, knowing that the products will end up being sold in the United States and in this District, and that Defendants' customer retailers and distributors then directly infringe one or more claims of the '045 Patent at least by importing into, offering for sale in, or selling in the United States and this District the Accused Products.

45.     The Accused Products are known by Defendants to be especially made or especially adapted for use in infringement of the '045 Patent and are not staple articles or commodities of commerce suitable for substantial non-infringing use.  Defendants' sale of the Accused Products to distributors and retailers and eventually end users has therefore contributed to and continue to contribute to the infringement of the '045 Patent.

46.     Defendants have infringed the '045 Patent through the aforesaid acts and will continue to do so unless enjoined by this Court.  Defendants' wrongful conduct has caused Plaintiff to suffer irreparable harm resulting from the loss of its lawful patent rights to exclude others from making, using, selling, offering for sale, and importing the patented invention. Plaintiff is entitled to injunctive relief under 35 U.S.C. § 283.

16

47.     Plaintiff is entitled to recover damages adequate to compensate for Defendants' infringement of the '045 Patent, as well as any other damages as appropriate under 35 U.S.C. § 284.

48.     Defendants' infringement of the '045 Patent has been and is willful, deliberate, and in disregard of Plaintiff's patent rights.  Plaintiff is thus entitled to enhanced damages up to three times the amount of actual damages under 35 U.S.C. § 284 and attorney fees under 35 U.S.C. § 285.

## PRAYER FOR RELIEF

Plaintiff respectfully asks the Court to grant the following relief:

A.  Judgment that each of the Patents-in-Suit are valid and enforceable;

B.  Judgment that Defendants have infringed and/or are infringing at least one or more claims of the Patents-in-Suit;

C.  Entry of preliminary and permanent injunctions pursuant to 35 U.S.C. § 283 and Rule 65 of the Federal Rules of Civil Procedure, enjoining Defendants and their officers, agents, attorneys, and employees, and those acting in privity or concert with them, from any further acts of infringement until the expiration of each applicable patent or until such later date as the Court may determine;

D.  Judgment awarding Plaintiff damages, in the form of lost profits, or in the alternative, not less than a reasonable royalty, together with pre-judgment and post-judgment interests;

E.  Enhanced trebled damages under 35 U.S.C. § 284 for Defendants' willful and malicious infringement,

17

F.  Judgment that this case is exceptional and awarding Plaintiff its attorney fees, expert expenses, and costs, in accordance with 35 U.S.C. §§ 284 and 285 and Rule 54(d) of the Federal Rules of Civil Procedure; and

G.  Awards of any further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury for all issues so triable.

Dated: June 11, 2026

/s/ Kris Y. Teng
Kris Y. Teng
Texas Bar. No. 24079443
Zhe "Philip" Wang (*pro hac vice* forthcoming)
Andrew Landers Ramos (*pro hac vice* forthcoming)
BAYES PLLC
8260 Greensboro Drive, Suite 625
McLean, VA 22102
Phone:   (703) 995-9887
Fax:      (703) 821-8128
kris.teng@bayes.law
philip.wang@bayes.law
andrew.ramos@bayes.law

Michael C. Smith
SCHEEF & STONE, LLP
State Bar No. 18650410
113 E. Austin St.
Marshall, TX 75670
Tel.: (903) 938-8900
michael.smith@solidcounsel.com

*ATTORNEYS FOR PLAINTIFF*
*Arashi Vision Inc. (d/b/a Insta360)*